IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CYNTHIA L. GAPPMAYER                                              PLAINTIFF

        v.                         Civil No. 2:11-cv-02054-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                    DEFENDANT

## MEMORANDUM OPINION

**I.**     **Factual and Procedural Background**

Plaintiff, Cynthia L. Gappmayer, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on September 20, 2006, alleging a disability onset date of November 22, 2005, due to carpal tunnel syndrome, arthritis, back and neck pain, attention-deficit/hyperactivity disorder ("ADHD"), depression, and anxiety disorder. Tr. 10, 128, 140, 238-249, 284. On the alleged onset date, Plaintiff was forty-six years old with a high school education. Tr. 18, 97, 289. She has past relevant work as a hair stylist. Tr. 18.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 140-146, 154-157. At Plaintiff's request, an administrative hearing was held on October 17, 2008. Tr. 39-92. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on January 14, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 125-136. Subsequently, on July 17, 2009, the Appeals Council remanded the action for further

development of Plaintiff's mental limitations. Tr. 137-139. A hearing was held on January 14, 2010. Tr. 93-120. Plaintiff was present and represented by counsel. Tr. 10. The ALJ rendered an unfavorable decision on June 18, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-19. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 15, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

## II.  Medical History

Plaintiff has a history of depression, anxiety, muscle pain, arthritis, shoulder and arm pain, neck and back pain, numbness and tingling in her hands, and obesity. Tr. 349, 498-531. On March 16, 2004, Plaintiff had a nerve conduction study performed, which was consistent with mild to moderate carpal tunnel syndrome, slightly worse on the left. Tr. 514. Plaintiff was prescribed Celebrex and instructed to use wrist splints. Tr. 517.

### A.  Trevor Hodge, M.D.

On April 28, 2006, Plaintiff presented to Trevor Hodge, M.D., to establish care. Tr. 359. She reported a history of low back pain, degenerative joint disease with radiating pain to her right leg, and back spasms. Tr. 359. Plaintiff's physical examination was entirely normal. Tr. 359. Dr. Hodge diagnosed Plaintiff with degenerative joint disease, hypertension, allergies, and carpal tunnel syndrome. Tr. 359. He prescribed Flexeril and Celebrex. Tr. 359. A lumbar CT scan revealed chronic disc disease at L4-5 with gas in the disc space and degenerative changes of the facet joints bilaterally, and narrowing of the neuroforamina bilaterally at L4-5 and L5-S1. Tr. 363-364. A lumbar spine series revealed mild scoliosis, minimal grade I spondylolisthesis at L4-5, and degenerative disc space narrowing and bilateral hypertrophic changes at L3-4. Tr. 367.

On August 25, 2006, Plaintiff reported neck, back, and shoulder pain that radiated to both arms. Tr. 358. On examination, Plaintiff had some tenderness on range of motion testing. Tr. 258. Dr. Hodge prescribed Lexapro and Celebrex and referred Plaintiff for physical therapy. Tr. 358. On October 6, 2006, Plaintiff complained of back, shoulder, and left foot pain, and stated that her antidepressant medication was not helping. Tr. 357. Dr. Hodge diagnosed Plaintiff with degenerative joint disease and hypertension, controlled. Tr. 357. He recommended back strengthening exercises, continued physical therapy, and weight loss by exercise and diet. Tr. 357.

### B. J. Michael Standefer, M.D.

On July 25, 2006, Plaintiff was evaluated by J. Michael Standefer, M.D., at the request of Dr. Hodge. Tr. 351-356. Plaintiff reported a history of low back and right lower extremity pain as well as carpal tunnel syndrome. Tr. 351. Dr. Standefer reviewed Plaintiff's CT results and noted that she had mild degenerative changes at L4-5, but no evidence of overt focal disc protrusion. Tr. 351, 354. He recommended conservative treatment to include physical therapy. Tr. 351. Plaintiff underwent physical therapy at Total Rehabilitation, Inc., from August 7, 2006, through November 1, 2006. Tr. 445-479. During this time, Plaintiff responded well to physical therapy and made steady progress toward her goals, with improved ambulation and improved back pain following treatment. Tr. 445, 452, 463, 466.

### C. Kathleen M. Kralik, Ph.D.

On November 13, 2006, Plaintiff saw Kathleen M. Kralik, Ph.D., for a consultative mental evaluation. Tr. 369-379. Plaintiff reported memory problems, difficulty focusing, distractibility, problems being around people, crying spells, and depression. Tr. 369. She had no prior history of mental health treatment, but began taking antidepressants in 2000 or 2001. Tr. 371. Plaintiff

reportedly took Cymbalta and Lexapro, but noted that she felt "edgy and grumpy" on Lexapro and did not believe it was helping. Tr. 371.

On examination, Plaintiff was oriented to person, place, time, and purpose, and was in touch with reality. Tr. 373. Plaintiff was pleasant and attentive initially, but manifested low energy/lethargy and lack of focus and effort on tasks. Tr. 372. She was tearful throughout the session. Tr. 372. Plaintiff's affect was appropriate to speech content and her range of expression appeared normal. Tr. 373. Thought processes seemed logical, organized, and goal-directed despite relative evasiveness and vagueness. Tr. 373. Thought content was notable for a pessimistic outlook. Tr. 373. Plaintiff's level of cooperation was overtly fair, but functionally quite limited. Tr. 372. Processing speed and efficiency were poor, and Plaintiff exhibited signs of cognitive clouding, low mental energy and effort, and inattentiveness. Tr. 373. Dr. Kralik noted that Plaintiff manifested intermittently impaired attention and concentration, possibly related to malingering and/or low motivation. Tr. 373. Judgment was considered fair by history but poor from the standpoint of potential employers. Tr. 374. Dr. Kralik noted that Plaintiff seemed very dependent on others and found possible exaggeration of Plaintiff's physical and mental symptoms. Tr. 369. She estimated Plaintiff's intellectual functioning to be within the borderline to low average range. Tr. 373.

Dr. Kralik diagnosed Plaintiff with somatoform disorder not otherwise specified ("NOS"), dysthymia, ADHD, predominantly inattentive type, and personality disorder NOS, with avoidant, dependent, and passive-aggressive features, and possible mild narcissistic and histrionic features as well. Tr. 375. Dr. Kralik estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 41-50. Tr. 375. She determined that Plaintiff's cognitive/mental symptoms were not of sufficient severity to preclude all forms of occupational functioning, noting that Plaintiff had maintained

employment in the past despite her allegations of longstanding depression. Tr. 375.

Dr. Kralik found that Plaintiff's daily adaptive functioning was somewhat impaired, but generally adequate for occupational purposes. Tr. 376-377. She found that Plaintiff's capacity to communicate and interact in a socially adequate manner, cope adaptively with the emotional and cognitive challenges in typical workplace settings, and cope with the typical mental/cognitive demands of basic work-like tasks seemed adequate for occupational purposes, but found that Plaintiff's willingness or interest was somewhat problematic. Tr. 377-378. Additionally, Dr. Kralik noted that Plaintiff's ability to attend and sustain concentration on basic tasks, sustain persistence in completing tasks, and complete work-like tasks within an acceptable time frame seemed problematic. Tr. 378. Dr. Kralik went on to note that Plaintiff's effort seemed poor and she "seemed quite invested in presenting herself . . . as more physically impaired than is objectively likely to be the case." Tr. 378. Symptoms of exaggeration included dramatic verbalizations, the difference in how she entered the office vs. exited the office, and manifestations of pain and physical complaints relative to those seen by others alleging and having far worse conditions. Tr. 378. Dr. Kralik noted that Plaintiff genuinely exhibited symptoms of ADHD, depression, and anxiety, but these symptoms seemed mild to moderate at most. Tr. 378. She determined that Plaintiff's performance seemed more consistent with a possible factitious disorder (i.e., exaggerating symptoms for the secondary gain she can derive in her social environment) rather than malingering for financial gain. Tr. 378.

**D. Agency Consultants**

In a Physical Residual Functional Capacity ("RFC") Assessment dated November 21, 2006, Jerry Thomas, M.D., an agency consultant, determined Plaintiff could occasionally lift/carry fifty pounds, frequently lift/carry twenty five pounds, stand/walk for about six hours in an eight-hour

workday, sit for about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 380-387. Dr. Thomas found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 382-384.

In a Psychiatric Review Technique Form ("PRTF") dated December 18, 2006, Kay M. Gale, M.D., considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.07 (somatoform disorders), and 12.08 (personality disorders), but determined Plaintiff's symptoms did not meet or equal a listed impairment. Tr. 393-406; 28 U.S.C. Pt. 404, Subpt. P, App. 1. She found moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 403. In a Mental RFC Assessment, Dr. Gale found Plaintiff moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public. Tr. 407-410. She determined Plaintiff was capable of performing unskilled work. Tr. 405, 409.

### E. Cooper Clinic

Plaintiff underwent physical therapy at Cooper Clinic. Tr. 434-435. At her initial evaluation on January 8, 2007, Plaintiff presented with a trunk range of motion slightly limited in flexion and extension, tightness at the end ranges of all planes, bilateral tenderness in the neck and upper back, and slight tenderness in the bilateral low back. Tr. 532. Sandy K. Atchinson, a physical therapist, noted that Plaintiff was tolerating treatment satisfactorily. Tr. 435. On February 26, 2007, Ms.

Atchinson noted that Plaintiff was making slow progress but had stopped coming to physical therapy after January 22, 2007. Tr. 618. As of March 7, 2007, Plaintiff had received twelve treatments and was tolerating treatment satisfactorily, with a steady increase in exercise level. Tr. 434. Her trunk range of motion continued to be slightly limited in all planes. Tr. 434. By April 6, 2007, Plaintiff had received fourteen treatments, which included electrical stimulation, moist heat, diathermy, and therapeutic exercise, and reported improvement. Tr. 532. Plaintiff did not return for subsequent treatment, stating she was babysitting, and was discharged from therapy. Tr. 532.

On February 13, 2007, Plaintiff presented to the Neurology department with complaints of back pain, neck pain, and headaches. Tr. 542-544. At the time, Plaintiff was taking Lorcet, Soma, and increasing amounts of ibuprofen. Tr. 544. She reported that physical therapy somewhat helped her pain. Tr. 544. Plaintiff also reported significant depression, which had not improved on Lexapro and Cymbalta. Tr. 544. On examination, Plaintiff had normal muscle tone and strength in her upper and lower extremities, with no signs of atrophy. Tr. 543. Reflexes were symmetrical and 2+ throughout with bilateral flexor plantar response. Tr. 543. Plaintiff was significantly sensitive to pinprick throughout, but no sensory deficits were noted. Tr. 543. Plaintiff could perform heel, toe, and tandem walking, and Romberg testing was negative. Tr. 542. Tonya L. Phillips, M.D., found no clear neurologic deficits and suspected that depression and musculosketetal degenerative pain, likely aggravated by obesity, accounted for Plaintiff's pain. Tr. 542. She recommended continued physical therapy and weight loss, and cautioned Plaintiff from using excessive amounts of ibuprofen, as it could be aggravating her headaches. Tr. 542. Dr. Phillips believed treating Plaintiff's underlying depression was key and instructed her to follow up with her primary care physician regarding medication changes. Tr. 542.

An MRI of Plaintiff's brain, performed on February 20, 2007, was negative. Tr. 528. An MRI of Plaintiff's cervical spine revealed reversal of the normal lordosis, positional vs. due to muscle spasm, small spurs and associated disc bulges in the mid-cervical region, and some diminution signal in the cervical spine, likely a variant. Tr. 529, 579-580. An MRI of Plaintiff's lumbar spine, dated March 29, 2007, revealed a mild central bulge at L5-S1, facet degenerative changes throughout the mid lower lumbar area, and multilevel spurs and disc bulges or tiny disc protrusions in the lower thoracic spine, with no evidence of disc herniation or canal stenosis. Tr. 578.

Plaintiff saw John H. Harp, M.D., on March 24, 2008, with complaints of bilateral hand numbness and pain. Tr. 540-541. On examination, Plaintiff's cervical spine range of motion was 90% of normal on forward flexion, side rotation, and side bending. Tr. 540. A Spurling's test was positive on bending to the left and right side. Tr. 540. Plaintiff had full motor strength in her upper extremities. Tr. 540. Sensation was diminished in the C6 distribution. Tr. 540. Phalen's, Tinel's, and carpal tunnel compression tests were negative on the right, but Tinel's and carpal tunnel compression tests were positive on the left. Tr. 540. Plaintiff had normal range of motion in her wrists and fingers. Tr. 540. A nerve conduction study was normal, with no evidence to suggest carpal tunnel syndrome or neuropathy. Tr. 586. Notably, there was significant improvement compared to the previous 2004 study. Tr. 583, 586.

On March 27, 2007, Chris C. Honaker, an occupational therapist, performed a physical functional capacity evaluation. Tr. 413-435. Mr. Honaker noted that Plaintiff gave sub-maximal effort on physical tasks, which affected the reliability of his findings. Tr. 413. Specifically, Plaintiff was able to lift a fifteen pound wooden box from fourteen inches, but could not lift an eight pound

wire basket from the same height. Tr. 420. Similarly, grip testing was suggestive of low effort. Tr. 425. On the Waddell Inappropriate Symptoms Questionnaire, Plaintiff presented with seven of seven inappropriate (anatomically unreasonable) responses, which was suggestive of inappropriate illness behavior. Tr. 427. Overall test scores, in combination with clinical observations, suggested considerable question as to the reliability/accuracy of Plaintiff's subjective reports of pain. Tr. 429. Mr. Honaker could not determine Plaintiff's baseline abilities due to unreliable subjective reports and less than full physical effort during testing. Tr. 430.

### F.  Western Arkansas Counseling and Guidance Center

On March 28, 2007, Plaintiff presented to Western Arkansas Counseling and Guidance Center ("WACGC") for treatment. Tr. 480-495. Plaintiff reported depression and chronic pain. Tr. 480. She stated she does not get along with others and does not like being around people. Tr. 481. She reported no prior inpatient or outpatient mental health treatment, but had taken various medications and was currently taking Lexapro and Cymbalta. Tr. 481. Plaintiff admitted that she was seeking mental health treatment partly due to her disability case. Tr. 482.

On examination, Plaintiff was oriented in all spheres. Tr. 482. She had a mild to moderate level of distress due to somatic concerns. Tr. 482. Plaintiff's mood was depressed and her affect was appropriate to mood, although somewhat dramatized. Tr. 482. Thought processes were logical and coherent, and thought content was notable for preoccupation with physical pain and depression. Tr. 482. Plaintiff denied suicidal ideation. Tr. 482. Plaintiff's memory appeared to be intact, and her insight and judgment were fair. Tr. 482. Yolanda Nally, a licensed social worker, noted that Plaintiff was cooperative, yet apathetic, and a bit overly dramatic. Tr. 482. She noted that the reliability of Plaintiff's information and the results of the exam were questionable, as Plaintiff

expressed a lot of somatic complaints in a histrionic-type manner and her symptomology was vague. Tr. 482. Ms. Nally diagnosed Plaintiff with depressive disorder NOS and rule out malingering. Tr. 482. She estimated Plaintiff's GAF score at 55. Tr. 482. She recommended individual therapy and medication management. Tr. 483. Ms. Nally noted that Plaintiff seemed poorly motivated for treatment and gave a fair prognosis. Tr. 482.

On July 20, 2007, Anna R. Martinazzo-Dunn, M.D., performed a psychiatric evaluation. Tr. 484-486. She diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychotic features, rule out ADHD NOS (by history), rule out alcohol/substance abuse, rule out personality disorder, and rule out borderline intellectual functioning. Tr. 485. Dr. Martinazzo-Dunn estimated Plaintiff's GAF score at 45. Tr. 485. She prescribed Sertraline, Seroquel, and Amitriptyline. Tr. 486. She encouraged Plaintiff to purchase generic medications to alleviate financial concerns. Tr. 484.

On August 2, 2007, Plaintiff stated she had not been taking her medications as prescribed, but her mood was somewhat better. Tr. 488. Dr. Martinazzo-Dunn was concerned about the use of alcohol or excessive amounts of pain medications and/or other illegal drugs. Tr. 488. She also noted the possibility of malingering. Tr. 488. On August 22, 2007, Ms. Nally noted that Plaintiff "is not motivated in any fashion to try to help herself." Tr. 487. Dr. Marinazzo-Dunn noted that Plaintiff had only been taking her medication intermittently and had not filled out her paperwork for the prescription assistance program. Tr. 675-676. She continued to be concerned about malingering. Tr. 675.

On September 22, 2007, Plaintiff admitted that she was "totally unmotivated" for treatment and had been forgetting to take her medication or taking it inconsistently. Tr. 672. Ms. Nally noted

that Plaintiff could not be helped until she made some effort to help herself. Tr. 672. She encouraged Plaintiff to become more physically active and to continue to get her medication managed. Tr. 672. On November 14, 2007, Plaintiff stated she was feeling "a bit better" and wanted to continue therapy with a new therapist. Tr. 679. Plaintiff was discharged from treatment on April 2, 2008, after failing to attend treatment. Tr. 681-687.

### G. Louis G. Sasser, M.D.

On December 19, 2007, Plaintiff presented to Sparks Pain Clinic. Tr. 601-603. On examination, Plaintiff had good range of motion in her cervical spine, but exhibited tenderness involving the paraspinous muscles of the neck across the trapezius areas and into the shoulders. Tr. 602. Plaintiff had grating on the left shoulder more than the right. Tr. 602. She had good range of motion in her elbows, wrists, hands, and fingers, without loss of function. Tr. 602. Deep tendon reflexes were symmetrical in the upper extremities. Tr. 602. Plaintiff's lumbar spine was tender across the entire lumbar spine into the posterior hips. Tr. 602. She had good range of motion of her hips, knees, and ankles, with good flexibility, and negative straight-leg raise. R. 602. Deep tendon reflexes were symmetrical. Tr. 602. Plaintiff was wearing wrist splints and using a cane to ambulate. Tr. 602. Grip was somewhat diminished, but symmetrical. Tr. 602. Louis G. Sasser, M.D., diagnosed Plaintiff with degenerative joint disease of the cervical and lumbar spine, carpal tunnel syndrome, left worse than right, and history of anxiety and depression. Tr. 602. He renewed Plaintiff's prescriptions for Lorcet, Soma, and ibuprofen 800mg, and encouraged her to increase her activities to build strength. Tr. 602-603. Dr. Sasser also noted that Plaintiff should see her primary care physician to "get her depressive illness under control." Tr. 603.

At a follow-up appointment on February 18, 2008, Plaintiff stated she had no decrease in pain, but admitted that she had not followed through on any of Dr. Sasser's suggestions due to financial reasons. Tr. 599. On May 14, 2008, Plaintiff reported that she had lost her cane, but was able to get around without it. Tr. 597. She also stated she was trying to be more active and had been using weights for exercise. Tr. 597. Dr. Sasser noted that Plaintiff was showing much better activity and had only mild tenderness involving the inferior aspect of the neck and trapezius area as well as the lower spine. Tr. 597. He considered adding Cymbalta or Lyrica for pain relief or Effexor for depressed mood. Tr. 598.

On September 17, 2008, Dr. Sasser completed a Medical Source Statement ("MSS"), in which he determined Plaintiff could sit for fifteen minutes at a time and for a total of six hours or more during an eight-hour workday, stand for thirty minutes at a time and for a total of one hour in an eight-hour workday, walk for fifteen minutes at a time and for a total of one hour in an eight-hour workday, and perform combined walking and standing for a total of two hours in an eight-hour workday. Tr. 592-594. He further determined Plaintiff could occasionally lift up to ten pounds, continuously lift up to five pounds, and frequently carry up to five pounds. Tr. 593. Dr. Sasser found that Plaintiff could perform simple grasping with both hands, but could not perform pushing or pulling or fine manipulation with either hand. Tr. 593. He found that Plaintiff could use both feet for repetitive movements and could frequently crawl and reach above her head, occasionally bend and climb, and never squat, stoop, crouch, or kneel. Tr. 593. Dr. Sasser determined Plaintiff could frequently be exposed to unprotected heights, moving machinery, marked temperature changes, and noise, but could only occasionally be exposed to dust, fumes, and gases, or drive automotive equipment. Tr. 593. He assessed Plaintiff's pain as moderate and determined she would need

unscheduled breaks during the workday and would likely miss more than four workdays per month. Tr. 594. In support of his assessment, Dr. Sasser noted that Plaintiff wore wrist splints on both wrists, exhibited tenderness in her lower neck, trapezius area, and lumbar spine, and used a cane to ambulate. Tr. 593.

    **H.**  **Healthsouth Rehabilitation Hospital**

X-rays of Plaintiff's cervical spine, dated May 7, 2009, revealed disc space narrowing and spurring, with mild reversal of the normal cervical lordosis but no definite acute bony abnormalities. Tr. 740. Plaintiff underwent physical therapy and tolerated treatment satisfactorily. Tr. 730. As of May 28, 2009, Plaintiff received five treatments and demonstrated mildly limited cervical range of motion in side bending and rotation to the left. Tr. 730. She was issued a TENS unit, which was effective for pain control. Tr. 729. As of June 16, 2009, Plaintiff's discomfort was minimal and she had met all her physical therapy goals. Tr. 729.

**III.**  **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions

represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.   ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since November 22, 2005, the alleged onset date. Tr. 12. At step two, the ALJ found Plaintiff suffers from mild degenerative disc disease of the lumbar spine, somatic disorder, and mild carpal tunnel syndrome, which were considered severe impairments under the Act. Tr. 12. At step

three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 12-13.

At step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could frequently push/pull with both upper extremities and handle, finger, or grasp, frequently use ramps and stairs, and occasionally use ladders, ropes, or scaffolds, balance, stoop, crouch, crawl, or kneel. Tr. 13-17. Mentally, the ALJ determined Plaintiff could have no transactional interaction with the public. Tr. 13-17.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 17-18. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Accordingly, the ALJ determined Plaintiff was not under a disability from November 22, 2005, the alleged onset date, through June 18, 2010, the date of the administrative decision. Tr. 19.

## V.  Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) finding her depression, anxiety, carpal tunnel syndrome, osteoarthritis, ADHD, and obesity to be non-severe ; (B) improperly determining her RFC; (C) discounting Dr. Sasser's opinion; and (D) improperly assessing her credibility. *See* Pl.'s Br. 11-19. For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as hotel maid, of which there are 5,300 jobs in Arkansas and 630,000 jobs nationally, school bus monitor, of which there are 500 jobs in Arkansas and 220,000 jobs nationally, and sorter, of which there are 1,500 jobs in Arkansas and 320,000 jobs nationally. Tr. 18-19, 116-117.

claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

This case was initially remanded by the Appeals Council for further development of the record concerning Plaintiff's mental limitations. Tr. 137-139. Following an additional hearing, the ALJ determined Plaintiff suffered from severe somatic disorder and limited her to work with no transactional interaction with the public. Tr. 12-14.

Dr. Kralik was the only psychologist to diagnose Plaintiff with somatoform disorder NOS. Tr. 375. She also noted that a factitious disorder could not be ruled out and seemed more likely than malingering for financial gain. Tr. 378. On the other hand, Plaintiff's psychiatrist and therapist at WACGC both noted the possibility of malingering. Tr. 482, 488, 675.

Somatoform disorders are characterized by "the presence of physical symptoms that suggest a general medical condition . . . and are not fully explained by a general medical condition." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 485 (4th ed., 2000) [hereinafter "DSM"]. The symptoms must cause clinically significant distress or impairment in social, occupational, or other areas of functioning. *Id.* Factitious disorders, on the other hand, are characterized by "the intentional production of physical or psychological signs or symptoms" without

external motivation. *Id.* at 513.  Presentation may include fabrication of subjective complaints, falsifications of objective signs, self-inflicted conditions, exaggeration or exacerbation of pre-existing general medical conditions, or any combination of these elements. *Id.*  Individuals with factitious disorder usually present their history with dramatic flair, but are extremely vague and inconsistent on further questioning. DSM, at 513.  Malingering and factitious disorders are similar in that they both require the intentional display of symptoms, but malingering is motivated by an external incentive. *Id.* at 516.

In both somatoform and factitious disorders, physical complaints are not fully attributable to a true general medical condition.  *Id.* at 485, 516.  However, symptoms are not *intentionally* produced in somatoform disorders. *Id; U.S. v. Farmer*, 647 F.3d 1175, 1176 n. 2 (8th Cir. 2011) (somatoform disorders are not the result of conscious malingering; sufferers see their symptoms as real).

This case is particularly problematic because the ALJ determined Plaintiff suffered from severe somatic disorder, but then discounted many of Plaintiff's complaints due to malingering. Tr. 12-17.  Since somatoform disorder is characterized by *unintentional* exaggeration of complaints and malingering is characterized by *intentional* exaggeration for gain, the undersigned cannot determine to what degree the ALJ found Plaintiff's complaints symptomatic of her somatoform disorder vs. malingering.  Moreover, the ALJ did not address Plaintiff's other alleged mental impairments, including depression, anxiety, and ADHD, and how they affect Plaintiff's ability to function in the workplace. As such, the undersigned concludes that substantial evidence does not support the ALJ's determination that Plaintiff can perform work in which there is no transactional interaction with the public.  On remand, the ALJ should clarify to what extent Plaintiff's symptoms can be attributed to

her somatoform disorder vs. malingering.  If necessary, Plaintiff should be sent for further psychological evaluation to provide a differential diagnosis.

## VI.     Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's mental RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 9th day of August 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE